1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No.  1:13-cv-01459-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| JOSE JAIME ANDRADE PEREZ, individually and dba LATINO'S BAR, | (Docket No. 9.) |
| Defendant. | **OBJECTIONS DUE: 14 DAYS** |
| _____/ | |

## I.    INTRODUCTION

On November 13, 2013, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed a Motion for Default Judgment against Defendant Jose Jaime Andrade Perez ("Defendant") individually and dba Latino's Bar. (Doc. 9.)   The Court reviewed the motion and supporting documentation and determined that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g); as such, the hearing on the motion is vacated.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the instant action on September 11, 2013, alleging violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of the California Business and Professions Code section 17200, *et. seq.*  (Doc. 1.)  The suit is based on Defendant's alleged unlawful interception, receipt, and exhibition of "*Julio Cesar Chavez, Jr. v. Sergio Martinez, WBC Middleweight Championship Fight*" (the "Program"), which was telecast nationwide on September 15, 2012.  (Doc. 1, ¶¶ 14-17.)  According to the complaint, Plaintiff was the exclusive commercial distributor of the Program.  (Doc. 1, ¶ 14.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain.  (Doc. 1, ¶¶ 17-18.)  Plaintiff seeks $110,000 in statutory damages as well as attorney's fees and costs.  (Doc. 1, p. 5.)  Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations.  (Doc. 1, ¶¶ 23-27.)  Plaintiff requests $60,000 in statutory damages, as well as attorney's fees and costs.  (Doc. 1, p. 6.)  Count III states a claim for conversion alleging that Defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit.  (Doc. 1, ¶¶ 28-31.)  As to Count III, Plaintiff seeks compensatory damages, exemplary damages, and punitive damages.  (Doc. 1, pp. 9-10.)  Count IV of the complaint alleges a violation of the California Business & Professions Code § 17200, *et. seq.*  (Doc. 1, ¶¶ 49-58.)   As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorney's fees, and costs of suit.  (Doc. 1, p. 10.)

On December 18, 2013, the summons was returned showing that service of the summons and complaint was effected on Defendant via substituted service under California law on December 17, 2013.  (Doc. 5.)  On January 27, 2014, pursuant to Plaintiff's request, the Clerk's Office entered default against Defendant.  (Docs. 6, 7.)  On March 25, 2014, Plaintiff filed this motion for default judgment.  (Doc. 9.)   On April 22, 2014, the Court issued an order for Plaintiff to provide a supplemental brief or declaration providing further evidence establishing proper service of process on Defendant.

### III.   DISCUSSION

**A.      Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> > (A)      conduct an accounting;
> > (B)      determine the amount of damages;
> > (C)      establish the truth of any allegation by evidence; or
> > (D)      investigate any other matter.

Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

**B.      Substitute Service on Defendant Was Proper**

Pursuant to the executed summons as well as the declaration of Lajla Shackelford, a registered process server, personal service was attempted on Defendant on December 12, 14, and 17, 2013, at 2142 Mitchell Road, Suite B, Ceres California ("Mitchell Road location").  (Doc. 5.) The address where service was attempted is a business location.  On December 17, 2013, after three unsuccessful attempts to personally serve Defendant at this location, substituted service was left with Maria "Doe," a persona apparently in charge of the business at the Mitchell Road location.  She was informed of the general nature of the documents and instructed to deliver them to Defendant.  (Doc. 5, Shackelford Decl., p. 1.)   The complaint and summons were then mailed to the Mitchell Road location on December 18, 2013.

On April 22, 2014, the court issued an order noting that the basis for attempted service on Defendant at the Mitchell Road location appeared predicated on Plaintiff's assertion in the

1  complaint that Defendant is the sole individual specifically identified on the California

2  Department of Alcoholic Beverage and Control ("ABC") license that was issued for the Latino's

3  Bar located at 2142 Mitchell Road, Ceres, California.  The California ABC website, however,

4  indicates that, at the time of service of the complaint in December 2013, the liquor license

5  identified by Plaintiff and allegedly held by Defendant, was "canceled" and had been canceled

6  since March 8, 2013.  Given that the liquor license appeared to be the sole basis for service of

7  Defendant at the Mitchell Road location, and because the license was apparently canceled at the

8  time of service of the complaint, it was not clear that Defendant was still associated with the

9  business at the Mitchell Road location at the time of substitute service on December 17, 2013.  As

10 such, the Court ordered Plaintiff to file a supplemental brief or a declaration explain why

11 substituted service at the Mitchell Road location constituted proper service on Defendant.

12      On April 29, 2014, Plaintiff filed both a supplemental brief and a supporting declaration

13 with exhibits setting forth the basis for service on Defendant at the Mitchell Road location.  (Doc.

14 12, 12-1.)  Plaintiff states that on May 24, 2013, prior to initiating suit, Plaintiff sent a demand

15 letter to Defendant at the Mitchell Road location, and Defendant responded to that letter on June

16 12, 2013.  The return address on the letter from Defendant shows that it was sent from the

17 Mitchell Road location.  (Doc. 12-1, Riley Decl., Exhibit 1, p. 6.)  On December 18, 2013, one

18 day after Defendant was served via substitute service, he sent a second letter to Plaintiff.  (Doc.

19 12-1, Riley Decl., Exhibit 2, p. 8.)  In that letter, Defendant acknowledged receipt of the summons

20 as well as his connection to Latino's Bar, operating at the Mitchell Road location.  (Doc. 12-1,

21 Riley Decl., Exhibit 2, p. 8.)  The letter identified the Mitchell Road location as the return address.

22 (Doc. 12-1, Riley Decl., Exhibit 2, p. 9.)

23      Federal courts cannot exercise personal jurisdiction over a defendant without proper

24 service of process.  *Omni Capital Int'l, Ltd v. Wolff & Co.*, 484 U.S 97, 104 (1987).  Service of

25 process is governed by the requirements of Federal Rule of Civil Procedure 4.  Rule 4(e) governs

26 service upon individuals within the United States.  Under Rule 4(e)(1), service on an individual is

27 sufficient if it is carried out under the law of the state in which the district court is located or in

28

4

1   which service is effected.  Here, a process server served Defendant at the Mitchell Road location,

2   which is in California; thus, California law applies.

3       California law provides for both personal and substitute service on an individual.  Cal. Civ.

4   Proc. Code § 415.10.  If a defendant cannot be personally served, a process server may leave the

5   summons and complaint with a resident or person apparently in charge of his/her place of

6   business, dwelling house, or usual place of abode and then mailing a copy of the documents to the

7   address served.   Cal. Civ. Proc. Code § 415.20(b).   Plaintiff has satisfied these service

8   requirements.

9       First, Plaintiff exercised reasonable diligence in attempting personal service before

10  substitute service is permitted.  *Evartt v. Super. Ct.*, 89 Cal. App. 3d 795, 799 (1979).  The facts

11  contained in Plaintiff's supplemental brief, the supporting declaration of Thomas Riley, and the

12  declaration of the process server, sufficiently establish that Plaintiff was diligent in attempting

13  service at the Mitchell Road location.  Not only does Plaintiff supply evidence indicating diligence

14  in connecting Defendant to Latino's Bar as his regular place of business, but the process server

15  also attempted service at that location three times before resorting to substituted service.  Second,

16  Plaintiff's process server left a copy of the summons and complaint with a person apparently in

17  charge of the Latino's Bar and instructed the person to deliver the documents to Defendant; the

18  documents were subsequently mailed to the Mitchell Road location.  Plaintiff's supplemental brief

19  and the Riley Declaration indicate Defendant received the summons and complaint and has actual

20  knowledge of this litigation.  Based on these facts, the Court finds that service on Defendant was

21  proper.

22  **C.      Entry of Default Judgment is Appropriate**

23      In its motion, Plaintiff seeks default judgment and an award of damages pursuant to

24  47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced

25  statutory damages) in the amount of $110,000 for unlawfully intercepting, receiving, and

26  exhibiting the Program on September 15, 2012.  (Doc. 9-1.)  Plaintiff also seeks damages in the

27  amount of $1,600 for its state law conversion claim.  (Doc. 9-1.)

28

1    The facts in this case weigh in favor of granting default judgment against Defendant.

2    Plaintiff's complaint properly and credibly alleges all material facts and elements necessary to the

3    claims asserted and relief sought, and reflects a meritorious substantive claim.  Defendant has

4    chosen not to respond to or contest this action or motion.

5         **1.     Application of the *Eitel* Factors Weigh in Favor of Default Judgment**

6         Factors which may be considered by courts in exercising discretion as to the entry of a

7    default judgment include:   (1) the possibility of prejudice to the plaintiff, (2) the merits of

8    plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

9    the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

10   due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

11   Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

12   1986).  Plaintiff's request for default judgment meets these factors.

13        Plaintiff would suffer prejudice if the Court does not enter default judgment, because

14   Defendant has refused to participate in this litigation, and Plaintiff would have no other means of

15   recovery.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.

16   Cal. 2003).

17        Plaintiff's complaint properly alleges the necessary elements of each cause of action, which

18   satisfies the second and third factors – the merits of the substantive claim and the sufficiency of

19   the complaint.  To state a claim for an alleged violation of Section 605, the plaintiff must plead

20   that the defendant received, assisted in receiving, or transmitted the plaintiff's satellite

21   transmission without authorization.  *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).

22   Plaintiff's complaint sets forth these allegations.  (Doc. 1, ¶¶ 14, 17 (Plaintiff alleges that it was

23   "granted the exclusive nationwide commercial distribution (closed-circuit) rights to [the Program]"

24   and that Defendant "did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the

25   Program at the time of its transmission at his commercial establishment in Ceres, California.")

26        Plaintiff also properly pleads a claim for conversion, of which the elements are "the

27   plaintiff's ownership or right to possession of the property at the time of the conversion; the

28   defendant's conversion by a wrongful act or disposition of property rights; and damages."  *Greka*

*Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005); Plaintiff's allegations that it had the right to possession of the property at the time that Defendant allegedly intercepted and displayed it at his establishment, that Defendant did not legally purchase the Program, and that exhibition of the Program in Defendant's establishment on September 15, 2012, constituted conversion by a wrongful act or disposition of property rights sufficiently pleads a claim for conversion under California law.  (Doc. 1, ¶¶ 14, 17, 28-31.)[1]

The fourth *Eitel* factor, sum of money at stake, also weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiff seeks an award of $10,000 for statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced statutory damages in an amount subject to the Court's discretion not to exceed $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $1,600 for conversion damages.  Under the applicable statute, Plaintiff is entitled to seek a substantial amount in damages.  Given the fact that Congress expressly permitted a court to award statutory damages up to $110,000 per act of piracy pursuant to Section 605, it is incongruent to determine that the statutory damages requested are an unreasonably large sum that should not be awarded in default judgment; certainly Congress envisioned circumstances where the imposition of maximum statutory damages would be reasonable.  Additionally, as set forth below, the actual award recommended by this Court is not of such an amount as to militate against proceeding by default judgment.  *See* Joe *Hand Promotions, Inc. v. Elk's Lodge Coalinga 1613*, No. 1:12-CV-01998-LJO-MJS, 2013 WL 5532043 (E.D. Cal. Oct. 7, 2013) report and recommendation adopted as modified, No. 1:12-CV-01998-LJO-MJS, 2013 WL 5969713 (E.D. Cal. Nov. 8, 2013).

With regard to the fifth *Eitel* factor regarding the possibility of dispute concerning material fact, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to

---

[1] Plaintiff also pled counts for violation of 47 U.S.C. § 553 and violation of the California Business and Professions Code § 17200.  In the motion for default judgment, however, Plaintiff does not seek an award of damages pursuant to these claims.

contradict the well-pled allegations.  The sixth factor also weighs in favor of granting default judgment, as there is no evidence that Defendant's failure to participate in the litigation is due to excusable neglect.

Lastly, while the policy favoring decisions on the merits inherently weighs strongly against awarding default judgment in every case, in the aggregate, this factor is outweighed in consideration of the other applicable factors that tip in favor of granting default judgment.

Accordingly, it is RECOMMENDED that Plaintiff's request for default judgment against Defendant be GRANTED.

**2.      Damages Should be Awarded in the Amount of $4,600**

Plaintiff seeks damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000, and $1,600 for conversion.

**a.      Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii).  (Doc. 9-1, 11:13-19:4.)  Pursuant to Section 605(a), "no person receiving, assisting in receiving, transmitting, or assisting in transmitting,  any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. . . ."  Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[2] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff seeks to be awarded the maximum allowance for statutory violations, totaling $10,000 under Section 605(e)(C)(i)(II).  Plaintiff requests that the Court note the specific facts of

---

[2] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distribute any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming.  Plaintiff does not assert that Paragraph 4 is applicable in this case.

1  this case: (1) the capacity of Defendant's establishment was 50 persons, and two separate

2  headcounts by Plaintiff's investigator revealed that 9 and 8 people were present on September 15,

3  2012, between 8:50 p.m. and 9:15 p.m., respectively; (2) the Program was displayed on one

4  television; and (3) no cover was charged to enter the establishment.   Defendants' "obtained a

5  coverage charge from its patrons . . . to view the Program."  (Doc. 9-1, 11:19-26; *see also* Decl. of

6  Affiant, Doc. 9-2, p. 2.)

7         Courts have taken several different approaches when establishing the appropriate amount

8  of damages to be awarded under Section 605(e)(C)(i)(II).   In *Kingvision Pay-Per-View, Ltd. v.*

9  *Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000), the court awarded the statutory

10 minimum of $1,000, finding that "distributors should not be overcompensated and statutory

11 awards should be proportional to the violation," but noting that "a higher statutory award may be

12 justified in cases where defendants are repeat offenders who have pirated similar Programs on

13 previous occasions, and who need an especially severe financial deterrent."  *Id*.  In *J & J Sports*

14 *Prods., Inc. v. Betancourt*, No. 08CV937JLS (POR), 2009 WL 3416431, at *3-*4 (S.D. Cal. Oct.

15 20, 2009), the court considered Section 605's policy of deterring future violations but noted that

16 "[i]n the absence of unusual or particularly egregious circumstances under which a defendant

17 broadcast[s][a] fight, the Court will not award the statutory maximum in damages."  *Id*. at *4

18 (quoting *Kingvision Pay-Per-View v. Guzman*, No. C 09-00217 CRB, 2009 WL 1475722, at *3

19 (N.D. Cal. May 27, 2009)); *see also J & J Sports Prods., Inc. v. Montano*, No. 1:12-CV-00738-

20 AWI-SAB, 2013 WL 1680633, at *3 (E.D. Cal. Apr. 17, 2013) (noting the different approaches

21 taken by courts); *J & J Sports Prods., Inc. v. Orellana*, No. 1:12-CV-01850-AWI-SMS, 2013 WL

22 3341001, at *4 (E.D. Cal. July 2, 2013) (citing over 15 district court cases awarding damages

23 ranging from the statutory minimum of $1,000 to the maximum of $10,000).

24        The Court is persuaded by the reasoning in *Backman*, which awarded the statutory

25 minimum of $1,000 in damages under Section 605(e)(C)(i)(II), plus compensatory damages

26 calculated from the plaintiff's actual loss.  *Backman*, 102 F. Supp. 2d at 1198-99.   Here, the

27 evidence shows that Defendant's establishment was less than one-quarter full at the time of the

28 investigator's headcounts.  (*See* Decl. of Affiant, Doc. 9-3, p. 2 (noting that the establishment had

9

1  a maximum capacity of approximately 30 to 50 people and that two separate headcounts revealed

2  8 and 9 people).)  The establishment did not request a cover charge.  (*See* Decl. of Affiant, Doc. 9-

3  3, p. 2 (noting that Plaintiff's investigator did not pay a cover charge to enter the establishment)).)

4  There was only one television broadcasting the Program. (*See* Decl. of Affiant, Doc. 9-3, p. 2.)

5  Further, there are no allegations by Plaintiff of Defendant's "repeat behavior, and no evidence of

6  otherwise egregious willfulness that would warrant harsh punitive damages in this case."

7  *Backman*, 102 F. Supp. 2d at 1199; *see also Montano*, 2013 WL 1680633, at *3 (awarding

8  minimum statutory damages for the same reasons).  Accordingly, the Court RECOMMENDS that

9  $1,000 in damages under Section 605(e)(C)(i)(II) be awarded.

10         **b.      Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

11         Plaintiff further requests that significant enhanced statutory damages be awarded under

12  Section 605(e)(3)(C)(ii) because Defendant's actions were willful and done for a commercial

13  advantage.  Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was

14  committed willfully and for purposes of direct or indirect commercial advantage or private

15  financial gain, the court in its discretion may increase the award of damages, whether actual or

16  statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this

17  section."  Emphasizing the need for deterrence as to this Defendant and others, Plaintiff requests

18  that it be awarded $100,000 in enhanced statutory damages.

19         With regard to enhanced statutory damages, several factors militate against a substantial

20  award.  There is no evidence that Defendant (1) advertised the broadcast of the Program to entice a

21  larger crowd, (2) charged a cover to enter the establishment, or (3) charged a premium for food

22  and drinks on the night the broadcast was shown.  Further, the headcounts during the Program

23  indicate that the establishment, which was relatively small, was less than one-quarter full.  (*See*

24  Decl. of Affiant, Doc. 9-3, p. 2.)  Moreover, Defendant has not been shown to be a repeat offender

25  with regard to signal piracy.

26         Plaintiff contends that nominal damages have proven insufficient to combat piracy and that

27  willful violators of applicable statues must be held accountable for a substantial amount above the

28  market value of the sublicense fee to broadcast the Program.  (Doc. 9-1, 19:6-20:1.)  The Court

1    finds, however, there is no evidence that Defendant's financial resources would require a large

2    judgment and that limited enhanced damages would produce the appropriate deterrent effect.

3    However, the Court is also mindful that minimal damage awards may result in a perceived lack of

4    consequences for signal piracy.

5          Considering these factors, the Court RECOMMENDS that enhanced statutory damages be

6    awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $2,000.

7          **3.      Damages for Conversion**

8          Plaintiff seeks $1,600 in conversion damages – the value of the property at the time of the

9    conversion.

10         Under California law, conversion is the wrongful exercise of dominion over the property

11   of another.  The elements of conversion are, "the plaintiff's ownership or right to possession of the

12   property at the time of the conversion; the defendant's conversion by a wrongful act or disposition

13   of property rights; and damages." *Greka Integrated, Inc.*, 133 Cal. App. 4th at 1581; *see also G.S.*

14   *Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).

15   "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of

16   knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1

17   (2009).  Exclusive right to distribute a broadcast signal to commercial establishments constitutes a

18   "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v.*

19   *Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without

20   authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182,

21   1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted

22   a right to possession of personal property for purposes of a conversion claim under California

23   law.)

24         The rate card for the Program at an establishment with a seating capacity of 30 to 50

25   people, which applies to Defendant's establishment, indicates the sub-license fee for the Program

26   would have been $1,600.  (Doc. 10, Gagliardi Decl., Exhibit 2, p. 18.)  Thus, Plaintiff is entitled to

27   damages for conversion in the amount of $1,600.

28

Accordingly, the Court RECOMMENDS that Plaintiff's request for conversion damages be GRANTED in the amount of $1,600.

### IV.   CONCLUSION AND RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.  Plaintiff's motion for default judgment be GRANTED;

2.  Judgment be entered in this action against Defendant Jose Jaime Andrade Perez individually and dba Latino's Bar, as follows:

    a.  $1,000 statutory damages for violation of 47 U.S.C. § 605; and

    b.  $2,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and

    c.  $1,600 for conversion damages.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **May 4, 2014**                              **/s/ Sheila K. Oberto**
                                                 UNITED STATES MAGISTRATE JUDGE